The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

Michael R. **MILLER**, Defendant–
Appellant.

No. 02CA1198.

Colorado Court of Appeals,
Div. III.

Nov. 6, 2003.

Rehearing Denied Feb. 5, 2004.

Certiorari Denied Sept. 7, 2004.

Stuart A. VanMeveren, District Attorney, Michael Pierson, Deputy District Attorney,

Benjamin Lammons, Deputy District Attorney, Fort Collins, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

The People appeal from the trial court's ruling that dismissed a charge of second degree assault on a peace officer filed against defendant, Michael R. Miller. We disapprove the ruling.

In June 2001, law enforcement officers responded to a report of domestic violence. At the scene, the officers observed defendant in a room with his girlfriend. He was intoxicated, angry, and yelling profanities.

Defendant was antagonistic to the two officers and charged toward one of them. Defendant was ordered to step back and sit on the bed. Instead, he cursed at the officer and remained standing. The officer then displayed a taser, an electronic restraint device, and pointed it at defendant's chest. When defendant saw the taser he assumed a fighting stance, cursed at the officer again, and dared him to shoot. The officer then used the taser, hitting defendant in the chest. The officers sought to restrain him, but defendant continued to resist physically; thus, the taser was deployed again.

Additional officers then arrived on the scene, and defendant was handcuffed and placed under arrest. Because he was kicking at the officers, leg restraints were also put on defendant. Defendant was placed in the back seat of a patrol car. When an officer leaned into the car to fasten the seatbelt around defendant, he spit in the officer's face. A spit shield was placed over defendant's head to prevent him from further spitting on the officers.

Defendant was charged with second degree assault on a peace officer and obstructing a peace officer. The case was tried to a jury. During deliberations, the jury asked the court to define the term "lawfully confined" for purposes of the assault charge. A conference was then held in chambers, during which the court found that for purposes of § 18–3–203(1)(f.5), C.R.S.2003, an individual is "lawfully confined" "where a person is under a sentence." Because defendant was not serving a sentence when he spit on the officer, the court dismissed the second degree assault on a peace officer count, and only the obstructing a peace officer count was submitted to the jury. This appeal followed.

I.

Defendant asserts that this case does not present an issue of law reviewable by this court because the trial court did not make a legal conclusion regarding the interpretation of the term "lawfully confined." We disagree.

"The prosecution may appeal any decision of a court in a criminal case upon any question of law." Section 16–12–102(1), C.R.S. 2003.

During the conference in chambers where the jury's question was discussed, the court stated:

[Section 18–3–203(1)(f.5)] says "while lawfully confined." In the instances above it, it's in a different context. [Section 18–3–203(1)(f)] says "while lawfully confined or in custody." I have to believe that something is meant by that difference and I think the answer is "lawfully confined" means the situation where a person is under a sentence. It does not mean a field arrest or mere custody.... The facts are uncontested that [defendant] was not in a facility because of a court—well, actually, he was in a facility as "detention facility" is defined here, but he was there merely because he was arrested, not because of a court order bringing him under lawful confinement. So, I think what that requires is that the Court grant the Defense's motion as to [the second degree assault count].

Contrary to defendant's contention, the record clearly demonstrates that the trial court interpreted the term "lawfully confined" to refer to an individual sentenced by a court of law and to exclude an individual under field arrest or merely in custody. Thus, the trial court decided a question of

law, and its statutory interpretation is reviewable.

## II.

The People argue that § 18–3–203(1)(f.5) applies to individuals who are under arrest, are confined to the back seat of a patrol car, and intentionally cause a law enforcement officer to come into contact with saliva. Defendant asserts that the term "lawfully confined in a detention facility" does not include individuals who are merely "in custody." We agree with the People.

Our review of a trial court's interpretation of a statute is de novo. *Rowell v. Clifford,* 976 P.2d 363 (Colo.App.1998). When interpreting a statute, we attempt to implement the intent of the General Assembly. To discern that intent, we look first to the plain language of the statute and interpret statutory terms in accordance with their commonly accepted meanings. *People v. Terry,* 791 P.2d 374, 376 (Colo.1990).

However, if the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply other rules of statutory construction, including an examination of the relevant legislative history. We must avoid a strained or forced construction of a statutory term. *People v. Terry, supra.*

Section 18–3–203(1)(f.5)(I), C.R.S. 2003, prescribes that an individual commits an assault in the second degree when:

> While lawfully confined in a detention facility within this state, a person with intent to infect, injure, harm, harass, annoy, threaten, or alarm a person in a detention facility whom the actor knows or reasonably should know to be an employee of a detention facility, causes such employee to come into contact with blood, seminal fluid, urine, feces, saliva, mucus, vomit, or any toxic, caustic, or hazardous material by any means, including but not limited to throwing, tossing, or expelling such fluid or material.

Section 18–3–203(1)(f), C.R.S.2003, proscribes the following conduct as a second degree assault: "[w]hile *lawfully confined or in custody,* he or she knowingly and violently applies physical force against the person of a *peace officer* or firefighter *engaged in the performance of his or her duties*" (emphasis added).

The People argue that notwithstanding the absence of the phrase "in custody" from § 18–3–203(1)(f.5)(I), the statute applies to individuals under arrest and confined to a police vehicle. In essence, the People argue that although the language "lawfully confined to a detention facility" may lend itself to multiple interpretations, the language of § 18–3–203(1)(f.5)(I) and (III)(A) and (B) and its legislative history compel the conclusion that the statute applies to individuals in lawful custody of law enforcement officials. We agree.

Defendant points to two differences in the statutes that he contends support his statutory interpretation: (1) the language "or in custody" is not included in § 18–3–203(1)(f.5)(I), as it is in § 18–3–203(1)(f); and (2) § 18–3–203(1)(f.5) uses the term "employee of a detention facility," rather than "peace officer . . . in the performance of his or her duties."

A plain language interpretation might not lead us to characterize an individual under arrest in a police vehicle as a person "lawfully confined in a detention facility." However, the General Assembly specifically defined "detention facility" as follows:

> As used in this paragraph (f.5), "detention facility" means any . . . enclosure, *vehicle,* institution, or place, whether permanent or temporary, fixed or mobile, where persons are or may be lawfully held *in custody or confinement* under the authority of the state of Colorado or any political subdivision of the state of Colorado.

Section 18–3–203(1)(f.5)(III)(A), C.R.S.2003 (emphasis added). Furthermore, "employee of a detention facility" is defined as follows: "As used in this paragraph (f.5), 'employee of a detention facility' includes . . . *law enforcement personnel,* and any other persons who are present in or in the vicinity of a detention facility and are performing services for a detention facility." Section 18–3–203(1)(f.5)(III)(B), C.R.S.2003 (emphasis added).

However, as defendant notes, the term "lawfully confined" is not defined by the statute. The dictionary definition of "confinement" is: "The act of imprisoning or re-

straining someone." *Black's Law Dictionary* 294 (7th ed.1999). "Confine" is also defined as "to keep to a certain place or to a limited area." *Webster's Third New International Dictionary* 476 (1986). It is unclear from the plain language of the statute whether the General Assembly intended "confined" to connote only "imprisoned" or also to connote "restrained" and "limited."

■ Therefore, we conclude that the language of § 18–3–203(1)(f.5) is ambiguous as to the scope of the term "lawfully confined." Accordingly, we look to the legislative history to ascertain the intent of this section. In so doing, we accord substantial weight to the sponsors' statements concerning a bill's purpose. *See People v. Zapotocky,* 869 P.2d 1234, 1239 (Colo.1994).

During the hearing before the House Judiciary Committee, the legislators discussed whether § 18–3–203(1)(f.5)(I) should be amended to add "or in custody" to mirror the language of § 18–3–203(1)(f). However, Representative Larry Schwarz, a bill sponsor, rejected the idea because the definition of "detention facility" was drafted to include enclosures where "persons are or may be lawfully held *in custody or confinement,*" and that language adequately addressed the issue. Section 18–3–203(1)(f.5)(III) (emphasis added); Hearings on H.B. 1186 before the House Judiciary Committee, 61st General Assembly, First Session (Feb. 4, 1997).

Similarly, during the hearing before the Senate Judiciary Committee, the scope of the statute was discussed. Senator Ken Chlouber, another bill sponsor, stated: "My … take on this [is] that this is not just for … prisoners that are already behind bars. They could be just arrested and could be in the back of [the officer's] patrol car … and do this and maybe for some other perhaps more minor infraction." Hearings on H.B. 1186 before the Senate Judiciary Committee, 61st General Assembly, First Session (Apr. 23, 1997).

Therefore, we conclude that § 18–3–203(1)(f.5) applies to an individual lawfully confined in a vehicle who is lawfully held in custody and whose victim is a law enforcement officer. Even though the General Assembly did not include the language "in custody" in § 18–3–203(1)(f.5)(I), the legislative

history demonstrates the intent that the statute would apply to individuals under arrest and confined to a patrol vehicle. Thus, the legislature defined "detention facility" in § 18–3–203(1)(f.5)(III) to include those in custody or confinement.

Here, the trial court dismissed the assault count because defendant was merely in custody and not serving a sentence. Under our interpretation, this dismissal was error.

Accordingly, the trial court's ruling is disapproved.

Judge NIETO and Judge CARPARELLI concur.