Opinion by JUDGE GRAHAM
*465 ¶ 1 Defendant, Theresa Marie Apodaca-Zambori, appeals the judgment of conviction entered on a jury verdict finding her guilty of assault in the first degree and reckless endangerment. She also appeals her sentence to serve ten years in the custody of the Department of Corrections. We affirm.
I. Background
¶ 2 On May 26, 2008, the victim, her husband, and children were driving through an alley that ran behind a store owned by defendant's boyfriend. The victim was forced to stop her car because defendant's car was blocking the path. The husband got out of the car, and there was a verbal altercation between the husband and several men, including defendant's boyfriend.
¶ 3 Evidence was presented at trial that defendant entered the store from the alley, returned with a dog, and as the victim opened her car door, told the dog to "get her." The dog bit the victim's leg, defendant attempted to pull the dog off of the victim, and the victim hit the dog on the snout. Eventually, the dog released the victim. The bite caused permanent nerve damage.
¶ 4 Immediately after the attack, defendant drove the dog to her father's house, located a few blocks away. When confronted by police, defendant denied knowing anything about an attack or the dog's location. Eventually, defendant told police the dog's location and helped them retrieve the dog.
¶ 5 Defendant was initially issued a summons for an animal control violation for refusing to produce an animal that was involved in a biting. The day after the attack, the police cancelled the summons, booked defendant on felony charges, and advised defendant of her Miranda rights. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
¶ 6 After a jury trial, defendant was convicted of assault in the first degree, a class three felony, and reckless endangerment, a class three misdemeanor. On January 15, 2010, the trial court sentenced defendant to ten years in the custody of the Department of Corrections and five years mandatory parole.
II. Miranda Issues
¶ 7 Defendant contends the trial court erred by admitting testimony and not striking references in the prosecution's closing argument to defendant's silence before and after receiving a Miranda advisement. We disagree.
¶ 8 When no contemporaneous objection is made, we review for plain error. People v. Taylor, 159 P.3d 730, 738 (Colo.App.2006). "Plain error is error that is so clear-cut, so obvious, a competent trial judge should be able to avoid it without benefit of objection." Id .
¶ 9 We review preserved claims for harmless error. People v. Allen, 199 P.3d 33, 37 (Colo.App.2007). A constitutional error is only harmless when the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the guilty verdict. Taylor, 159 P.3d at 739. "The constitutional harmless error test 'is not whether, in a trial, that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.' " Bernal v. People, 44 P.3d 184, 200-01 (Colo.2002) (quoting Blecha v. People, 962 P.2d 931, 942 (Colo.1998) ).
¶ 10 A defendant is constitutionally protected against self-incrimination and has the right to remain silent. U.S. Const. art. V ; Colo. Const. art. II, §§ 18, 25 ; People v. Herr, 868 P.2d 1121, 1124 (Colo.App.1993). A prosecutor should avoid making comments regarding a defendant's pre-arrest or post-arrest silence. People v.Hardiway, 874 P.2d 425, 427 (Colo.App.1993) ; Herr , 868 P.2d at 1124. However, such an error is only reversible when the prosecutor uses the defendant's silence as a means of implying guilt. Herr , 868 P.2d at 1124 ; Hardiway , 874 P.2d at 427.
¶ 11 Here, the arresting officer testified that defendant initially invoked her right to remain silent and asked if she could come back to the police station to make a statement *466 if she changed her mind about remaining silent. She was informed that she could, but she did not. Additionally, an animal control officer testified that when defendant told police the location of the dog, she did not mention that the bite was an accident, that the dog got loose, or that she tried to get the dog under control and was not able to do so. During closing argument, the prosecutor stated that defendant "never once said anything or asked once if the victim was okay."
¶ 12 Defendant objected to each of these statements, and therefore, we review for harmless error. We conclude these statements were not made for the "purpose of suggesting the jury infer guilt from" defendant's silence. Rather, the statements addressed defendant's theory of the case, which was that she was attempting to pull the dog off the victim and help, rather than commanding the dog to attack. We also note that the trial court instructed the prosecution during a side bar, "You're not going to emphasize failure of a statement, because she has a right not to make a statement," and limited the questioning to whether defendant came back to the police department to make a statement. Further, any possible error was harmless because the statements were brief and did not constitute a significant portion of the questioning. Herr, 868 P.2d at 1124.
¶ 13 Defendant also contends that certain statements during the prosecution's closing argument improperly attempted to cause the jury to infer guilt from her silence. During rebuttal, the prosecution stated:
• "What she did after the fact shows a culpability of guilt. She takes the dog in her car to protect herself and [her boyfriend]. She hides evidence."
• "Then, only when confronted and after being arrested does she come clean, but not all the way. The only thing she gives up is where the dog is."
• "So was it an accident? How did the dog get out? How did the dog get out and attack? The evidence that you have suggests nothing of the sort. Nothing of an accident."
• "Why claim no knowledge?"
¶ 14 Defendant did not object to any of these statements, and therefore, we review for plain error. Again, we conclude that the purpose of these statements was not to cause the jury to infer guilt from defendant's silence. The first three statements do not even refer to defendant's silence, but to her acts. Additionally, the statements were appropriate responses to defense counsel's closing argument, during which she argued that defendant's actions before, during, and after the attack were proof of innocence. People v. Perea, 126 P.3d 241, 247 (Colo.App.2005) ("A prosecutor is afforded considerable latitude in replying to an argument by defense counsel." (quoting People v. Wallace, 97 P.3d 262, 269 (Colo.App.2004) )). Therefore, we conclude that any possible error during the prosecution's rebuttal was not so clear-cut or obvious that the trial court should have corrected the error without the benefit of defendant's objection, and consequently, was not plain error.
III. Sentencing
¶ 15 Defendant contends that the trial court erred during sentencing by not considering section 18-1.3-407.5, C.R.S.2012 (repealed Oct. 1, 2012), Colorado's young adult offender sentencing statute, which took effect October 1, 2009. Specifically, defendant argues that the trial court incorrectly concluded that the effective date of the statute referred to the date of the offense, rather than the date of sentencing. Defendant asserts that the statute applied to her case because she was sentenced after October 1, 2009, even though she committed the offenses before that date. We disagree.
¶ 16 Statutory interpretation is a question of law, which we review de novo. Kazadi v. People, 2012 CO 73, ¶ 11, 291 P.3d 16. When the statutory language is clear and unambiguous, we interpret the statute as written without resort to interpretive rules and statutory construction. People v. Harrison, 165 P.3d 859, 859 (Colo.App.2007).
¶ 17 The principles of statutory construction may be applied to determine the correct effective date of a statute. Tacorante v. People, 624 P.2d 1324, 1330 (Colo.1981). Under *467 article V, section 19 of the Colorado Constitution, "[a]n act of the general assembly shall take effect on the date stated in the act."
¶ 18 Section 18-1.3-407.5 created alternative sentencing options for offenders between the ages of eighteen and twenty-one. It stated that "[o]n or after October 1, 2009, a young adult offender may be sentenced to the youthful offender system in the department of corrections." § 18-1.3-407.5(1)(a), C.R.S.2012. The session law that adopted the statute-but not the text of the statute-states that the act "shall take effect October 1, 2009" and that "[t]he provisions of this act shall apply to offenses committed on or after the applicable effective date of this act." Ch. 77, sec. 6, 2009 Colo. Sess. Laws 285.
¶ 19 We conclude that the plain language of the statute and the session law adopting it makes clear that the effective date of the statute is October 1, 2009, and that it applies to offenses committed on or after that date. Therefore, the trial court correctly refrained from considering the statute during defendant's 2010 sentencing for her 2008 offenses.
¶ 20 The judgment and sentence are affirmed.
JUDGE TAUBMAN and JUDGE HAWTHORNE concur.