Opinion by JUDGE TAUBMAN
*476 ¶ 1 Defendant, Arturo Luna, Jr., appeals the trial court's judgment of conviction entered upon jury verdicts finding him guilty of second degree assault-in jail/bodily fluids, two counts of violating his bond conditions, resisting arrest, and disorderly conduct. We affirm.
I. Background
¶ 2 On May 13, 2010, two unidentified males reported to police officers near a strip of bars in Fort Collins that Luna and another suspect had assaulted them and had attempted to rob them of their wallets. Luna and his companion were stopped by the officers a short distance away. The unidentified males declined to press charges against Luna or his companion.
¶ 3 Luna acted aggressively after being stopped, yelling profanities at the officers and passing pedestrians. Nevertheless, the officers told Luna he was free to leave the scene. Still, Luna continued his aggressive behavior and spat in the direction of the officers. The officers then placed Luna under arrest for disorderly conduct and put him in the back of a patrol vehicle. From the backseat of the patrol vehicle, Luna spat in the face of one of the officers.
¶ 4 Following a jury trial, Luna was found guilty of all charged counts.
¶ 5 This appeal followed.
II. Violation of Bond
A. Sufficiency of the Evidence
¶ 6 Luna asserts that insufficient evidence exists to support his convictions of violating the terms of his bonds, because the prosecution did not present evidence to prove that his bonds were in effect at the time of the events giving rise to his conviction. We disagree.
1. Standard of Review
¶ 7 "We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction." Clark v. People, 232 P.3d 1287, 1291 (Colo.2010).
¶ 8 In reviewing a sufficiency of the evidence challenge, Colorado courts employ a "substantial evidence test" to determine whether the evidence presented by the prosecution was sufficient to sustain the defendant's conviction. Id. Under this test, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." Id . (quoting People v. Bennett, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973) ).
¶ 9 Finally, "[i]t is axiomatic that the burden of proof rests upon the prosecution throughout the trial [to] prove beyond a reasonable doubt the existence of all essential elements necessary to constitute the offense charged. 'The burden is never on the defendant to show that he did not commit the crime.' " Leonard v. People, 149 Colo. 360, 372, 369 P.2d 54, 61 (1962) (quoting 1 Anderson, Wharton's Criminal Evidence § 10 (12th ed. 1955)).
2. Relevant Facts
¶ 10 Luna posted bonds in relation to two separate charges on August 28, 2009, and February 15, 2010. The conditions of both bonds prohibited any further violations of the law. Both bonds stated that they remained in effect "until entry of an order for deferred prosecution or deferred judgment, plea of guilt, nolo contendere or conviction unless *477 the written consent of surety is filed of record."
¶ 11 As a result of the underlying conduct in this case, Luna was charged with violating the terms of both bonds. At trial, the prosecution introduced the bonds into evidence, but otherwise presented no direct evidence that the bonds were in effect at the time of the charged conduct. Similarly, Luna presented no evidence that the bonds had been dismissed or had otherwise expired.
¶ 12 The trial court submitted the following instruction to the jury regarding the bond violations:[1]
The elements of the crime of Violation of Bail Bond Conditions ... are:
1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. was accused by information of the commission of a felony, and
4. was released on bail bond of whatever kind, and
5. knowingly violated a condition of the bail bond by committing a new law violation.
After considering all the evidence, if you decide the People have proven each of the elements beyond a reasonable doubt, you should find the defendant guilty of Violation of Bail Bond Conditions....
After considering all the evidence, if you decide the People have failed to prove any one or more of the elements beyond a reasonable doubt, you should find the defendant not guilty of Violation of Bail Bond Conditions ....
3. Discussion
¶ 13 Section 18-8-212(1), C.R.S.2012, provides:
A person who is released on bail bond of whatever kind, and either before, during, or after release is accused by complaint, information, indictment, or the filing of a delinquency petition of any felony arising from the conduct for which he was arrested, commits a class 6 felony if he knowingly fails to appear for trial or other proceedings in the case in which the bail bond was filed or if he knowingly violates the conditions of the bail bond.
¶ 14 Although the statute does not explicitly provide that the terms of a bond must be in effect in order for the terms to be violated, we conclude that the statute, and the corresponding jury instructions in this case, necessarily include such a requirement for four reasons. First, logically, the terms of a bond cannot be violated if those terms are no longer in effect. Second, the statute requires a defendant "knowingly violate[ ] the conditions of the bail bond." A defendant cannot knowingly violate the terms of a bond that is not in effect.
¶ 15 Third, interpreting the statute to conclude that it implicitly requires that the bond be in effect at the time of the alleged conduct implements the plain meaning and purpose of the statute-to criminalize violations of bail bonds. This conclusion is consistent with other decisions that have held that certain terms, such as the requisite mental state, are implicit in the language of the statute. Cf. Coffman v. Colo. Common Cause, 102 P.3d 999, 1005 (Colo.2004) ("in construing a statute, we will adopt a construction that will serve the legislative purposes underlying the enactment," which can be determined from the plain language of the statute); Gorman v. People, 19 P.3d 662, 665 (Colo.2000) ("We have held that legislative silence on the element of intent in a criminal statute is not to be construed as an indication that no culpable mental state is required. Rather, the requisite mental state may be implied from the statute." (citation omitted)); People v. Castro, 657 P.2d 932, 940 (Colo.1983) (court could read a mens rea of knowingly into a statute with no culpable mental state when it was "quite apparent" the statute intended a mental state to apply)[2] ;
*478 People v. Saiz, 660 P.2d 2, 6-7 (Colo.App.1982) (statute crediting defendants with time served in pretrial detention should be read to include the implicit requirement that the pretrial detention be related to the crime and sentence to which the time served is applied).
¶ 16 Fourth, where the record contains evidence that a bond has been issued prior to the charged date of violation, and no evidence is offered that the bond was no longer in effect, a reasonable inference may be drawn that the bond was in effect at the time of the charged violation.
¶ 17 Accordingly, we conclude that in order to prove that a defendant violated section 18-8-212(1), the prosecution must prove beyond a reasonable doubt that the terms of the bond were in effect at the time of the alleged illegal conduct.
¶ 18 Here, the prosecution presented circumstantial evidence, which when taken in the light most favorable to the prosecution, established that the bonds were in effect at the time of the charged conduct. Specifically, the bonds which were introduced into evidence, stated that they would remain in effect subject to the occurrence of certain events. No evidence was presented that any of these events had taken place. Accordingly, the jury could reasonably infer that they continued to be in effect at the time of the charged conduct. Therefore, we conclude that sufficient evidence existed to support Luna's convictions for violating the terms of his bonds.
B. Jury Question
¶ 19 Luna asserts that the trial court erred by issuing a misleading answer to jury questions, which asked whether the bonds were in effect on the date of the offense. We disagree.
1. Standard of Review
¶ 20 Luna did not object to the trial court's answer to the jury questions. Accordingly, we review for plain error. People v. Apodaca-Zambori, 2013 COA 29, ¶ 8, 410 P.3d 463. "Plain error is error that is so clear-cut, so obvious, a competent trial judge should be able to avoid it without benefit of objection." People v. Taylor, 159 P.3d 730, 738 (Colo.App.2006).
2. Relevant Facts
¶ 21 During deliberations, the jury submitted the following questions to the court: "How long does the appearance bond remain in effect? Was the original bond still in effect on May 13, 2010? Were the conditions still in effect on May 13, 2010?" The trial court asked counsel for their opinions on how to respond. Luna's counsel asserted that the trial court should not answer the questions in the affirmative, as doing so would impermissibly provide additional evidence to the jury. He further asserted that he believed that all evidence had been presented and that "the jury will have to make some kind of decision upon that." The prosecution asserted that the trial court should answer the questions on their merits, and stated that it thought it was "appropriate to advise [the jury] of those facts."
¶ 22 Recognizing that the jury questions addressed "a matter of additional fact," the trial court stated that in response to the jury questions, "I'm going to write, simply, each of these charges must be evaluated based on their respective elements only, evaluated only on their respective elements, respective elements as set forth in the instructions."[3] Neither party objected to the trial court's proposed answer.
3. Discussion
¶ 23 The Colorado Supreme Court adopted the ABA Standards for determining how a trial court should respond to questions from the jury:
If the jury, after retiring for deliberation, desires to be informed on any point of law, *479 they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless:
(i) the jury may be adequately informed by directing their attention to some portion of the original instructions;
(ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or
(iii) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.
People v. Alexis, 806 P.2d 929, 931 (Colo.1991) (quoting ABA Standards for Criminal Justice 15-4.3 (a) (2d ed. 1980)). However, where "the question from the jury [does] not relate to the law of the case, but [rather] to the extent and meaning of the evidence set forth in the stipulation," the trial court may refer the jury back to the original jury instructions. Id. at 931-32.
¶ 24 Here, the jury questions involved a factual matter - whether the conditions of the bonds were in effect on May 13, 2010. Accordingly, the trial court correctly declined to address the merits of the questions, and instead referred the jury back to the elements of each charge. Cf. Leonardo v. People, 728 P.2d 1252, 1255 (Colo.1986). Doing so sufficiently responded to the jury's questions, because the original jury instruction implicitly required the jury to find beyond a reasonable doubt that the bond terms were in effect. Thus, had the jury been ultimately unsure as to whether the evidence established that the bond terms were in effect, it would have found Luna not guilty pursuant to the original jury instructions.
¶ 25 Luna asserts, however, that the trial court's answer was confusing and therefore lowered the prosecution's burden of proof. Even if we assume that the answer was somewhat confusing, we conclude that it was sufficiently clear such that it did not rise to the level of plain error.
¶ 26 Accordingly, we conclude that the trial court did not commit plain error in responding to the jury's questions.
III. Second Degree Assault
¶ 27 Luna asserts that insufficient evidence exists to support his conviction of second degree assault, because the prosecution did not prove that he was "lawfully confined in a detention facility" at the time of the assault. Specifically, he asserts that being placed under arrest in a patrol vehicle does not constitute being "lawfully confined in a detention facility." We disagree.
¶ 28 Luna was convicted of second degree assault pursuant to section 18-3-203(1)(f.5)(I), C.R.S.2012, which provides that a person is guilty of second degree assault if,
[w]hile lawfully confined in a detention facility within this state, a person with intent to infect, injure, harm, harass, annoy, threaten, or alarm a person in a detention facility whom the actor knows or reasonably should know to be an employee of a detention facility, causes such employee to come into contact with ... saliva.
Subsection (1) (f.5) (III) of the statute further provides that for the purposes of the statute:
(A) ... "detention facility" means any building, structure, enclosure, vehicle, institution, or place, whether permanent or temporary, fixed or mobile, where persons are or may be lawfully held in custody or confinement under the authority of the state of Colorado or any political subdivision of the state of Colorado.
(B) ... "employee of a detention facility" includes employees of the department of corrections, employees of any agency or person operating a detention facility, law enforcement personnel, and any other persons who are present in or in the vicinity of a detention facility and are performing services for a detention facility.
¶ 29 In People v. Miller, 97 P.3d 171 (Colo.App.2003), a division of this court considered a factually similar assault, in which the defendant spat on a police officer from the backseat of a patrol car shortly after being arrested. There, the trial court dismissed the defendant's charge of second degree assault, concluding that the defendant was not "lawfully confined" because he was not "under sentence" at the time of the assault.
*480 Id . at 172. The prosecution appealed the trial court's conclusion. Id . The division disapproved of the trial court's ruling and concluded that section 18-3-203(1)(f.5)"applies to an individual lawfully confined in a vehicle who is lawfully held in custody and whose victim is a law enforcement officer." Id . at 174. In doing so, the division rejected the defendant's assertion that the use of "confined" in the statute intended something more than "in custody." Id . at 173.
¶ 30 Luna asserts that we should depart from the division's decision in Miller, because it failed to consider People v. Olinger, 39 Colo.App. 491, 566 P.2d 1367 (1977). There, a division of this court considered a previous version of the second degree assault statute and concluded "that the word 'confined' ... connotes detention in an institution" and that "the legislature intended the word 'confined' to have a meaning different from and to be more restrictive than 'custody.' " Id . at 493, 566 P.2d at 1368. We conclude, however, that Olinger is distinguishable because it considered a prior version of the statute. Further, the division in Miller premised its conclusion on legislative history surrounding the relevant statutory amendments following Olinger . Miller, 97 P.3d at 174 ; see also Hearings on H.B. 1186 before the House Judiciary Comm., 61st Gen. Assembly, 1st Sess. (Feb. 4, 1997). Accordingly, consideration of Olinger does not require a different result.
¶ 31 Luna also asserts that the Miller division's holding is inconsistent with the plain meaning of the statute. Specifically, he asserts that because the statute requires that the defendant assault an "employee of a detention facility," it would make little sense that a patrol car could be a detention facility under the plain meaning of the statute. However, subsection (1) (f.5) (III)(A) of the statute defines "employee of a detention facility" to include law enforcement personnel-in addition to "employees of the department of corrections [or] any agency or person operating a detention facility." § 18-3-203(1) (f.5) (III)(A). Accordingly, although the plain meaning of subsection (1)(f.5)(I) may appear ambiguous, any such ambiguity is clarified by the above definitions. See also Miller, 97 P.3d at 174 (during the legislative session discussing the statute, "Senator Ken Chlouber ... stated: '... [T]his is not just for ... prisoners that are already behind bars. They could be just arrested and could be in the back of [the officer's] patrol car ... and do this and maybe for some other perhaps more minor infraction.' ").
¶ 32 Therefore, we decline to depart from Miller, and we conclude that the prosecution presented sufficient evidence to support Luna's conviction for second degree assault. Specifically, two police officers testified that they witnessed Luna spit on an officer from the backseat of the patrol car.
¶ 33 The judgment is affirmed.
JUDGE GRAHAM and JUDGE HAWTHORNE concur.

The jury instructions included separate instructions for each count of violating the terms of a bond. The two instructions were substantially identical, with the only differences being the case numbers of the corresponding bonds and the inclusion of "consuming alcohol" as a means of violating the 2009 bond.

We acknowledge that section 18-1-503(2), C.R.S.2012, provides authority for courts to infer a mens rea requirement in statutes that do not otherwise include one. See People v. Gross, 830 P.2d 933, 940 (Colo.1992). Nevertheless, we find the analysis applied in these cases persuasive here.

The record does not contain the actual written response to the jury. Accordingly, we discern the content of the response from the trial court's statements in the transcript.