18CA1454 Peo v Lucero 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA1454 Alamosa County District Court No. 17CR442 Honorable Michael A. Gonzales, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Danny Norman Lucero, Defendant-Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE DUNN Dailey and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Tracy C. Renner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Danny Norman Lucero, appeals his judgment of conviction after a jury found him guilty of second degree assault. We affirm. I. Background ¶ 2 In September 2017, Lucero went to the Alamosa Police Department for an interview. At the end of the interview, Corporal Jamie Coulson and Officer John Vasquez handcuffed Lucero and led him through the station and out the back door to the parking lot for transport to jail. It’s undisputed that Lucero had a bloody nose (and some abrasions) by the time the group reached the police car, and that Officer Vasquez ended up with blood spatter on his face. But the parties disputed how those things happened. ¶ 3 According to the officers, as they escorted Lucero through the station, he became increasingly agitated and swore at Officer Vasquez. Then, while still handcuffed, Lucero squatted down, flexed his arms, and stiffened his hands. This movement caught Officer Vasquez’s wrist in the handcuff chain. And it’s undisputed Officer Vasquez’s wrist was injured; the jury saw a photograph of the injury. To release Officer Vasquez’s wrist, the officers testified that they lifted Lucero and “put him up against” a locker. 
2 ¶ 4 Once Officer Vasquez’s wrist was released, the officers escorted Lucero out of the building to Corporal Coulson’s police car (over Lucero’s continued resistance). The officers explained that they then opened the car door, turned Lucero around so that he was facing them, and sat him down. As Lucero was scooting to the back of the seat, both officers said that he spat at Officer Vasquez, splattering blood and saliva on the officer’s face. ¶ 5 At trial, Lucero’s counsel offered a different version of events. Defense counsel posited that, in response to Lucero’s aggressive tone and language, the officers became physical and slammed Lucero into a wall, causing him to bleed. As to the blood on Officer Vasquez, defense counsel argued that Lucero sneezed, and, because he had a bloody nose, the sneeze resulted in the blood spatter on Officer Vasquez’s face. Defense counsel contended that the officers, realizing they had injured Lucero and that there would be consequences, “used [the blood on Officer Vasquez] as their way out” — to make it “look like” Lucero was the aggressor. ¶ 6 In addition to other charges not relevant here, the People charged Lucero with second degree assault for spitting on Officer Vasquez. The jury found Lucero guilty but determined that the 
3 assault occurred while Lucero was “acting upon a provoked and sudden heat of passion” (reducing the conviction from a class 4 felony to a class 6 felony). ¶ 7 Lucero appeals his conviction, arguing that (1) insufficient evidence supports it; (2) the failure to preserve surveillance video showing the parking lot violated his due process rights; (3) the trial court erred by failing to disclose any records from Officer Vasquez’s internal affairs file; (4) the trial court abused its discretion by allowing Officer Vasquez to give expert testimony in the guise of lay testimony; and (5) the trial court erred by refusing to instruct the jury on the affirmative defense of self-defense. ¶ 8 We perceive no reversible error and therefore affirm the judgment of conviction. II. Second Degree Assault ¶ 9 The prosecution charged Lucero with second degree assault under section 18-3-203(1)(f.5)(I), C.R.S. 2020. A person is guilty under that statute if, [w]hile lawfully confined in a detention facility . . . a person with intent to infect, injure, harm, harass, annoy, threaten, or alarm a person in a detention facility whom the actor knows or reasonably should know to be an 
4 employee of a detention facility, causes such employee to come into contact with blood . . . [or] saliva . . . including but not limited to throwing, tossing, or expelling such fluid or material. (Emphasis added.) ¶ 10 For purposes of this statute, a detention facility includes “any building, structure, enclosure, vehicle, institution, or place . . . where persons are or may be lawfully held in custody or confinement.” § 18-3-203(1)(f.5)(III)(A). Lawfully confined, however, is not defined. ¶ 11 Lucero contends that the prosecution presented insufficient evidence to prove either (1) that he was “lawfully confined in a detention facility” at the time of the assault or (2) that Officer Vasquez was an “employee of a detention facility.” ¶ 12 We review de novo whether sufficient evidence was presented to sustain a conviction. People v. Perez, 2016 CO 12, ¶ 8. In doing so, we must determine whether the evidence, when viewed in the light most favorable to the prosecution, was substantial and sufficient to support a conclusion by a rational jury that the defendant was guilty beyond a reasonable doubt. Id. 
5 ¶ 13 When a sufficiency claim depends on our interpretation of a statute, we also review that issue de novo. McCoy v. People, 2019 CO 44, ¶ 37. Our primary task in construing a statute is to ascertain and give effect to the General Assembly’s intent. Id. To do that, we begin with the statute’s plain language. People v. Huckabay, 2020 CO 42, ¶ 13. If the language is clear and unambiguous, we apply it as written, construing the words and phrases according to the rules of grammar and common usage. See id.; accord McCoy, ¶ 37. A. Lawfully Confined ¶ 14 Lucero doesn’t dispute that he was in custody when he spat on Officer Vasquez. But he argues that “lawfully confined” means something different than “in custody.” Additionally, because “he was in the process of being placed in” the police car when he assaulted Officer Vasquez, Lucero contends he was not confined “in a detention facility” when the assault occurred. ¶ 15 We start with Lucero’s argument that confinement and custody are different for purposes of subsection (f.5). To get there, Lucero relies on People v. Olinger, 39 Colo. App. 491, 566 P.2d 1367 (1977). That case also involved a defendant who spat on a police 
6 officer while in (or near) a police car and was convicted of second degree assault. Construing an older, different version of the second degree assault statute, Olinger concluded that “lawfully confined” had a narrower meaning than “in custody.” Id. at 493, 566 P.2d at 1368. ¶ 16 But Olinger is not helpful for a couple of reasons. First, it’s unclear exactly where the defendant in Olinger was when he assaulted the officer. The case suggests the defendant was not in the police vehicle and that, instead, the assault occurred outside the police car; thus, the defendant was not confined. See id. at 492, 566 P.2d at 1367-68 (describing assault occurring as the defendant “was taken out of the police car”). But, in any event, the second degree assault statute has since been amended, and two divisions of this court have construed the current statute more broadly to include confined individuals who are “under arrest.” See People v. Luna, 2013 COA 67, ¶¶ 29, 31; see also People v. Miller, 97 P.3d 171, 173 (Colo. App. 2003). ¶ 17 Luna is particularly instructive. There, the jury convicted the defendant of second degree assault for spitting on a police officer while the defendant was seated in the back of a police car. On 
7 appeal, the Luna division determined that any ambiguity in the term “lawfully confined” was clarified by the broad statutory definitions of “detention facility” and “employee of a detention facility.” Luna, ¶¶ 29, 31. Considering these two definitions and the legislative history of subsection (f.5), the Luna division concluded that a defendant under arrest and in a patrol vehicle is “lawfully confined” for purposes of subsection (f.5). Id. at ¶ 32; see also Miller, 97 P.3d at 174 (quoting legislators’ statements that subsection (f.5) was intended to apply “not just” to prisoners but also to those “arrested” and “in the back of” a police car) (citation omitted). Because we are persuaded Luna correctly interpreted subsection (f.5), we decline Lucero’s request that we interpret “lawfully confined” to exclude someone who is “in custody” and confined in a police vehicle. ¶ 18 Lucero next tries a different approach and says that, because he was “in the process” of being placed in the police car — and, in his view, not fully in the car when he spat on Officer Vasquez — the evidence was insufficient to show he was “in a detention facility.” But Corporal Coulson testified that Lucero was handcuffed, in the backseat, and “scooting his butt into the back of the seat” when the 
8 assault occurred. And both officers testified the parking lot was a “secured facility” surrounded by a wall and fence and not accessible by the public. From this evidence, a reasonable juror could conclude that Lucero was lawfully confined in the police car (or in the enclosed, secure parking structure) when the assault occurred. See Luna, ¶ 32; see also § 18-3-203(1)(f.5)(III)(A) (defining a detention facility broadly to include a “vehicle” and any “structure, enclosure, . . . or place”). We therefore conclude that the prosecution presented sufficient evidence that Lucero was lawfully confined in a detention facility when he assaulted Officer Vasquez. B. Employee of a Detention Facility ¶ 19 We likewise reject Lucero’s argument that the People provided insufficient evidence that Officer Vasquez was an employee of a detention facility. ¶ 20 An “employee of a detention facility” includes employees of the department of corrections, employees of any agency or person operating a detention facility, law enforcement personnel, and any other persons who are present in or in the vicinity of a detention facility and are performing services for a detention facility. § 18-3-203(1)(f.5)(III)(B). 
9 ¶ 21 Although Lucero agrees Officer Vasquez qualifies as law enforcement personnel, he contends that “law enforcement personnel” is limited by the next clause: “who are present in or in the vicinity of a detention facility and . . . performing services for a detention facility.” Thus, according to Lucero, law enforcement personnel must be at a detention facility or nearby and performing services for the facility to qualify as an “employee of a detention facility.” ¶ 22 Though we doubt that Lucero’s interpretation is correct, see Luna, ¶ 31 (noting that law enforcement personnel are employees of a detention facility for the purposes of the second assault statute), even if we accept his interpretation, the prosecution presented sufficient evidence for the jury to find that Officer Vasquez qualified as an “employee of a detention facility.” Officer Vasquez testified that he was employed by the Alamosa Police Department and was assisting Corporal Coulson with placing Lucero in the police car (a detention facility under the second degree assault statute) for transport to jail (also a detention facility). From this, a reasonable jury could conclude that, while helping put Lucero in the police car, Officer Vasquez was “present in or in the vicinity of a detention 
10 facility and . . . performing services for a detention facility.” § 18-3-
203(1)(f.5)(III)(B). ¶ 23 And although Lucero points out that his actions also fit under a different subsection of the second degree assault statute, section 18-3-203(1)(h), that doesn’t change anything. After all, the prosecution has discretion to determine what charges to file when a defendant’s conduct violates more than one statute. § 18-1-408(7), C.R.S. 2020. Here it exercised that discretion by charging Lucero under subsection (f.5). ¶ 24 We thus conclude that sufficient evidence supports Lucero’s conviction for second degree assault. III. Surveillance Video ¶ 25 Lucero next contends that the court erred by denying his motion to dismiss the second degree assault charge as a sanction for the failure to preserve video surveillance footage. We are unpersuaded. A. Background ¶ 26 At the preliminary hearing, Officer Vasquez testified that, in addition to a camera in the interview room, there were cameras in the police parking lot. When asked if he had obtained the footage 
11 from the parking lot, Officer Vasquez said he hadn’t because it was dark and he didn’t think the video “was going to show anything.” But he said the footage was saved. ¶ 27 However, when Lucero filed a subpoena seeking the video footage from the parking lot (about four months after the preliminary hearing), he learned it had been automatically purged. Lucero then moved to dismiss the second degree assault charge as a sanction for the failure to preserve the footage, which he asserted “would have been exculpatory.”1 ¶ 28 At the hearing on Lucero’s motion, the Alamosa police chief confirmed there were “two cameras in the parking area,” but, by the time he received the subpoena seeking the footage, no videos before 2018 remained. When asked about this, the chief explained that the surveillance system automatically purged videos after about a month and a half. He also testified that, although the outside cameras “may have” captured “a small piece” of what happened, it was unlikely the cameras would’ve captured the relevant 1 Lucero also contended that the prosecution’s failure to produce the video footage violated its disclosure obligations. The trial court rejected this argument, and Lucero doesn’t re-raise it on appeal. 
12 movements based on the location of the outside cameras and his understanding of where the police car was parked. ¶ 29 The trial court denied the motion, finding that Lucero hadn’t established the video surveillance had exculpatory value or that the State acted in bad faith in purging the video. B. Analysis ¶ 30 To establish a due process violation for failure to preserve exculpatory evidence, the defendant must demonstrate that (1) state action destroyed the evidence; (2) the evidence had exculpatory value that was apparent before the state destroyed it; and (3) the defendant could not obtain comparable evidence by other reasonably available means. People v. Braunthal, 31 P.3d 167, 173 (Colo. 2001). ¶ 31 If the evidence was not apparently exculpatory before it was destroyed but was only “potentially useful,” the defendant must show that the state acted in bad faith when it destroyed the evidence to obtain relief. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988); People v. Abdu, 215 P.3d1265, 1270 (Colo. App. 2009). ¶ 32 Here, the evidence doesn’t show that the surveillance footage contained apparently exculpatory value before it was purged. At 
13 most, the evidence shows that the cameras “may have” captured a “small piece” of the events, but, based on the locations of the outdoor cameras and the police car, it’s unlikely the cameras “would have captured any of the movements.” Without any evidence that the outside cameras captured the interaction between Lucero and the officers, or what the footage would have shown, Lucero wasn’t able to demonstrate that the footage had exculpatory value that was apparent before it was purged. See Abdu, 215 P.3d at 1270; see also Braunthal, 31 P.3d at 174-75 (the burden is on the defendant to establish that evidence had apparent exculpatory value when it was destroyed). Even assuming — as Lucero contends — that the missing footage was potentially useful to his defense, he didn’t establish that the police department acted in bad faith. Youngblood, 488 U.S. at 58 (concluding that the destruction of potentially useful evidence — that is, not apparently material and exculpatory evidence — constitutes a due process violation only when it’s done in bad faith); accord Abdu, 215 P.3d at 1270. The evidence showed only that the surveillance footage was automatically purged as part of the system’s routine functioning. See Abdu, 215 P.3d at 1270 (There was no bad faith where 
14 videotape was destroyed “automatically and not through any deliberate decision to deprive defendant of evidence.”). ¶ 33 Officer Vasquez’s testimony that the video was saved as of the preliminary hearing date doesn’t change the fact that the footage was purged automatically. No evidence suggests the police deliberately destroyed the footage. See Illinois v. Fisher, 540 U.S. 544, 548 (2004) (finding no due process violation where potentially useful evidence was destroyed in normal course while a discovery request was pending because there was no evidence of bad faith). And even if the failure to save the surveillance video was negligent, the negligent destruction of potentially useful evidence doesn’t violate due process. Youngblood, 488 U.S. at 58; see also Fisher, 540 U.S. at 548. ¶ 34 For these reasons, we see no due process violation. IV. Officer Vasquez’s Internal Affairs File ¶ 35 Before trial, Lucero asked the trial court to “order the release and production” of Officer Vasquez’s internal affairs and personnel file. Lucero specifically sought, among other things, any excessive use of force complaints and records related to dishonesty and untruthfulness. 
15 ¶ 36 After conducting an in camera review of Officer Vasquez’s file, the trial court denied the request, finding “none of the documents” were relevant to the case. Lucero now asks us to review Officer Vasquez’s file to determine whether the court abused its discretion by denying the motion. See People v. West, 2019 COA 131, ¶ 31. ¶ 37 Based on our independent and careful review of Officer Vasquez’s internal affairs file, we agree that the file contains nothing relevant to Lucero’s case. We therefore conclude that the trial court didn’t abuse its discretion by denying Lucero’s request. V. Lay Opinion Testimony ¶ 38 Next, Lucero contends that the trial court erred by allowing Officer Vasquez to offer expert opinion in the guise of lay testimony. We perceive no reversible error. ¶ 39 We review a trial court’s decision to admit lay opinion testimony for an abuse of discretion. Venalonzo v. People, 2017 CO 9, ¶ 24. Where, as here, a defendant objected to the challenged testimony, we review for harmless error and will reverse only if an error substantially influenced the verdict or affected the fairness of the trial. See Hagos v. People, 2012 CO 63, ¶ 12. 
16 ¶ 40 Though police officers may testify as lay witnesses “based on their perceptions and experiences,” an officer’s testimony crosses the line from lay to expert opinion when it is based on an officer’s specialized skills or training. People v. Stewart, 55 P.3d 107, 123 (Colo. 2002); see also People v. Veren, 140 P.3d 131, 137 (Colo. App. 2005). ¶ 41 Officer Vasquez testified at trial about what happened the day Lucero assaulted him, describing his interactions with, and perceptions of, Lucero. Officer Vasquez also outlined his extensive experience and training, including his training as a use of force instructor. And referring to his use of force training, Officer Vasquez described aspects of Lucero’s body language and actions that he believed indicated Lucero was going to attack. He then described Lucero’s actions in reference to “an OODA loop” — a term from his training that describes the cycle that the brain goes through “when you are going to make an action.” And he explained how he engaged Lucero in conversation to essentially break 
17 Lucero’s concentration.2 The court allowed this testimony over defense counsel’s objection that it was improper opinion testimony. ¶ 42 Even if we assume that some aspects of Officer Vasquez’s testimony crossed into the realm of expert evidence, we conclude that any error in admitting the testimony was harmless for two reasons. ¶ 43 First, the testimony was largely cumulative. The jury heard extensive evidence of Lucero’s demeanor and actions. Indeed, it was undisputed that Lucero was upset when the officers handcuffed him and aggressive as they escorted him through the police station to the parking lot. Corporal Coulson testified that he requested Officer Vasquez’s assistance because he anticipated Lucero would be upset that he was going to jail. He then explained that as they escorted Lucero through the station, Lucero became increasingly angry, swore at them, and physically resisted them. 2 Lucero also recites Officer Vasquez’s testimony that police officers are trained to “verbalize everything” to their partners and why they do so. But beyond recounting the testimony, Lucero doesn’t further address it. To the extent he contends that was improper opinion testimony, we decline to address this undeveloped argument. See People v. Wallin, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address arguments presented in a perfunctory or conclusory manner). 
18 ¶ 44 Another witness present at the police station also described Lucero as aggressive, swearing, and resisting as the officers escorted him through the station. And in addition to this testimony, the jury saw surveillance video showing the officers handcuffing Lucero and, thus, were able to independently observe and assess Lucero’s demeanor. ¶ 45 Second, the improper testimony was brief when compared with Officer Vasquez’s proper testimony, which largely focused on what he personally observed. ¶ 46 Given that the improper testimony was cumulative and brief, we conclude that Officer Vasquez’s testimony was harmless. See People v. Dominguez, 2019 COA 78, ¶ 77 (concluding that agent’s improper expert testimony was harmless in part because it was cumulative of other evidence); accord People v. Baird, 66 P.3d 183, 192 (Colo. App. 2002); see also People v. Mendenhall, 2015 COA 107M, ¶ 69 (stating that improper witness testimony was harmless because, among other things, it was “brief and constituted a small part of his testimony”). 
19 ¶ 47 We conclude any error in admitting the improper expert opinion didn’t substantially influence the verdict or affect the fairness of the trial. VI. Self-Defense Jury Instruction ¶ 48 We also reject Lucero’s final contention that the trial court erred by refusing to instruct the jury on the affirmative defense of self-defense. ¶ 49 A defendant is entitled to an instruction on an affirmative defense if he presents “some credible evidence” supporting it. § 18-
1-407(1), C.R.S. 2020. We review de novo whether sufficient evidence supports a requested jury instruction. O’Shaughnessy v. People, 2012 CO 9, ¶ 13. ¶ 50 Lucero asked the court to instruct the jury on self-defense. In support of the instruction, Lucero pointed to evidence that he was not bleeding when he arrived at the police station but was when he left. He argued that this evidence established “a scintilla of evidence” that he acted in self-defense and that he spat on Officer Vasquez “to terminate the abuse that was being inflicted on him.” The trial court disagreed, finding that “the quantum of evidence necessary to allow this instruction” wasn’t met. 
20 ¶ 51 We agree with the trial court’s assessment. The only evidence presented showed that Lucero was injured at some point when the officers were attempting to extricate Officer Vasquez’s wrist from the handcuff link. And Lucero doesn’t contend that he spat at Officer Vasquez inside the police station or in response to the officers’ actions to free Officer Vasquez’s wrist. Instead, the evidence shows that Lucero waited until he sat in the police car to assault Officer Vasquez. Nothing in the record suggests that Lucero was defending himself at that time or that he faced any imminent harm. See § 18-
1-704(1), C.R.S. 2020 (stating when a person is justified in using self-defense); cf. People v. Suazo, 867 P.2d 161, 169 (Colo. App. 1993) (collecting definitions of “imminent” — “near at hand, impending[,] or on the point of happening”; “likely to happen without delay”; and “menacingly near”) (citations omitted). ¶ 52 We therefore conclude the trial court properly refused to instruct the jury on self-defense. VII. Conclusion ¶ 53 We affirm the judgment of conviction. JUDGE DAILEY and JUDGE KUHN concur.